Okay, you're in the 1st district appellate court, 1st division. And we're here for the oral argument in the case of. In Ray, the commitment of Michael Sewell. And that's 1 dash 22 dash 0168. My name is Terry 11. And I'll be presiding today. My our colleague, James Fitzgerald Smith. Has some technical issues, and it's going to continue to try to get online with us. But if he can't. But if he can't, he'll listen to the arguments later. So what we're looking for. To start out from each of you, we'll give you about 10 minutes uninterrupted to prepare your. Arguments and give us the most solid part of your arguments, and then we will ask you some questions. We're looking basically for about 20 minutes apiece the. Petitioner, or the respondent, I should say should save 5 minutes or so for rebuttal. So, today you have with me, my colleague, and as I mentioned, justice, James Smith is also. On our panel, and we'll try to get on. He's continuing to try to get on electronically right now. Let's start with the argument for the appellant. Thank you, your honor Michael Johnson on behalf of Mr. soul. May it please the court and counsel. Sexually violent person cases involve the most oppressive pre trial delay in the entire state. If not in the entire country. We know from reviewing appellate court decisions. That the pre trial delay is not uncommon to see 8 years, 10 years, 12, even 13 years. And it's not just limited to the 1st district. This occurs throughout the state here. Mr. soul waited for a 2 day trial. He waited nearly 15 years for a 2 day trial. And we've raised 5 issues in our brief. I'd like to focus 1st. On the fact that he was denied both his statutory and constitutional right to a speedy trial. And then 2nd, I'll turn to the issue of the fry. And the claim, and 3rd, I'd like to focus on the issue that the petition should have been dismissed because it was not timely filed. Turning to my 1st point, which is that Mr. soul was denied his statutory right to a speedy trial. In this case, Mr. soul filed a written demand for trial on January 6th of 2020. The act provided him with the right to have that trial within 120 days, and he did not receive that trial within 120 days. And therefore. The cause should have been dismissed. The trial court in this case did not dismiss the case because it believed that the Illinois Supreme Court orders. That told the speedy trial term in criminal and juvenile delinquency cases also told the term for SVP act cases. This was legally incorrect. The Illinois Supreme Court orders were clear, direct and precise in their language. They told only the. Speedy trial terms for criminal cases and criminal defendants. As well as juvenile delinquency cases and juveniles subject to that law. In fact, the court, the court's initial. Order tolling the speech trial term for criminal cases left out delinquency cases and then a couple of weeks later, it amended it to include juvenile delinquency cases. No amendment ever occurred to told a speedy trial term under the sexually violent persons commitment act, which is a different statute and which is civil in nature, not criminal in nature. We know that from section 20 of the act, and the Illinois Supreme Court knew that when it issued these orders, because it had previously determined in the case of Samuelson back in 1999. That SVP cases were not subject to double jeopardy or ex post facto provisions because they were not criminal. They were civil. And the Illinois Supreme Court's decision to exclude SVP cases from this tolling term makes sense because in criminal cases. Defendants who are pre trial can be released on bond or pre trial release in juvenile delinquency cases, the minors can be returned back to their family. Or another guardian yet in SVP cases, there is no provision for a pre trial release, so it does make sense that these types of cases would be excluded from having the toll turned. Here, Mr. Sewell spent far longer than 120 days demanding trial and the cause should have been dismissed. Turning to my second point, relatedly, is that Mr. Sewell was denied his constitutional right to a speedy trial. Unlike the statutory right to a speedy trial, which does not require a showing of prejudice that the constitutional speedy trial term. requires consideration of four factors, the last of which is prejudice, and so the first factor is the length of the delay and here the length of the delay. could not have been greater Mr Sewell spent almost 15 years waiting for his two day trial. The reasons for the delay of the second factor, and here we've asserted that over 3200 days of delay were attributed to the state and the state has failed to meet its burden of justifying that delay that delay included occasions where on August 19 of 2019 the parties appeared for trial and the state sought to amend the SVP petition on that date. Using the evaluations that had previously been completed in 2016 and 2017 so the state waited. You know, at least two years to amend the petition, because it was not trying to get the case to trial, it was not making any effort to have the case tried. Instead, what has been doing since this court remanded it back from the rule 308 appeal was the state had been intentionally delaying the case. Embracing delay at every opportunity and seeking to avoid having the trial, and so, even though the respondent was served with that amended petition as directed by the trial court overnight and counsel conferred with him and that he continued to persist in his request for the case to proceed on August 20. Let me let me interrupt you now at this point, you're talking about these delays during the period of time from October. 2006 in January 2020, isn't it true that the respondent. Continue to agreed to continue the case. And all but 1 occasion, that's that's correct. The majority of the dates were by agreement dates. However, that is not dispositive. The majority all all, but 1. That is correct, but all that is not dispositive of the issue of under the constitutional analysis by agreement dates can still be you have to look at the underlying reason. For the delay, not just whether it was agreed to. The other thing I'd ask you about this period of time, when was it that if he was. Just if we're just going on the criminal sentence, when could he be released from prison for that? That wasn't until 2008. Correct. If you're looking at the term of parole and the discharge, that's correct. We had the discharge date in August of 2008. Okay, please proceed. But even still, even though he may have been subject to parole, in fact, the prisoner review board ordered that he returned to parole. That would have meant that he was out of custody, not in prison from 2006 to 2008. And this petition caused him to remain in custody. During that time period, what was he doing when he was being held? Does he participate in any of the therapies that were being offered? I didn't see any evidence of that in the record. That's correct. There's no evidence in the record. And so this is a man who demands a speedy trial, but doesn't go to a single meeting to try to contribute to the argument that he should be released. Why should we care about that? First of all, because he doesn't have an obligation to participate in any treatment until he's found to be a sexually violent person, and he can persist in his denial that he is a sexually violent person. If he starts participating in treatment, then they'll be seeking to use evidence against him. He still has the right to remain silent. So I don't think that's a consideration here as to whether or not he participated in treatment. The fact of the matter is that he was released. Excuse me, he has the right to remain silent under what authority? Section 25 of the Sexually Violent Persons Commitment Act is a statutory right. Okay, and additionally, he was released into the community in 2005. And he was participating in some level of treatment in the community. And so this is something that took him out of the community. Where the prisoner review board found that he could have returned to. Took him out of the community after he was arrested for rape after he busted out of jail and then. Rape 3 other women, right? Well, yes, those offenses were in the 70s and he had completed those sentences. As late as early as 1987, those sentences were completed, so he was not serving time for those sentences. In 2005, going back to the. The state in 2019, not being ready for the trial can necessitated then a motion to dismiss and then on March 9th when the case was again set for trial. The court declined to allow the trial to go forward because it wanted to have time to rule on the. Motion and then, of course, the pandemic happens. And throughout this time, the state claims that it's ready for trial. And yet the court is not summoned. Summoning jurors to court until. The middle of 2021. And the state. You know, the court describes a process. The trial court describes a process where they're allowing criminal cases to proceed because there's only 1 jury each week and that cases are not going to be heard over a priority above a criminal case. And the state throws up its hands and says, you know what? That's just the way it is. There's nothing we can do. We're at the whim of the state's attorney's office and the presiding judge. We have no way to get this case to trial. And so the state embraces the delay and respondent does not embrace the delay. He files a motion to expedite the trial date. And on June 14th of 2021, the presiding judge tells the parties that they can have a jury trial. At the 3rd Municipal District Courthouse in Rolling Meadows and the state says, oh, no, we we're not ready for trial. We have an out of state witness. So the state was not ready to proceed to trial. And that calls into question all every other time when it claimed that it was ready for a trial. But for the fact that there were no jurors that is shown to be something that could not have been true because they had an out of state witness and they were not prepared for a trial. This all occurs until finally August 30th of 21 when the trial does, in fact, proceed. And based on the four factors under Barker, which include the presumptive prejudice owing to the almost 15 years waiting for trial, we submit that the cause should have been dismissed and this court should reverse for an order his discharge. Before we go to your colleague, let me ask you about Barker. When we do we analyze the 4th factor in Barker prejudice in a different manner, given that this case involves civil commitment. Mental illness and future risk rather than holding people accountable for their past criminal acts as in criminal cases. So different kind of analysis apply here. No, and I think, in fact, the prejudice is greater here because there's no opportunity for pretrial release. There's no opportunity for bond. And if you look at the California and the Kansas Supreme Court decisions that dismissed. Or they ordered the dismissal based on speedy trial issues and act. And under their act, they applied the prejudice prong similarly. But again, under our statute, it is unique because there's no opportunity for pretrial release and that strengthens the claim of prejudice and makes it different from a criminal case. Okay, let's hear from the. Good morning, your honors and may it please the court and counsel. I am assistant attorney general on behalf of the people. This court should affirm the judgment because there was no violation of respondents statutory or constitutional trial rights. Now, turning 1st toward the issue of the statutory, the argument that there was a violation of the statutory speedy trial, right? Now, there's no issue here that if the Illinois Supreme Court administrative orders, the emergency orders that were in effect regarding the COVID-19 pandemic. Apply in this case that the there was no violation of the 120 days. And indeed, those orders do apply. The section 35 of the act is clear that continuances may be granted and thus time excluded from calculations. Of the speedy trial period, quote, subject to section 1 of 3 dash 5 of the code of criminal procedure. So, it's clear that when we are determining whether continuances were properly, properly granted and whether those times were told pursuant, whether those times were told is determined by whether they would be told under that provision of the criminal code. This isn't surprising. While it is true that the act generally is civil in nature, the section 20 also makes clear that the civil practice act applies quote, except as otherwise provided in this act. And so, in section 35 of the act, it specifically provides that speedy trial calculations must be done subject to 1 of 3 dash 5 of the code of criminal procedure. And this also is not surprising because the entire view of the speedy trial issue is done through the lens of the criminal speedy trial constitutional rights and the statutory rights. So, it's borrowed from the criminal rights as are certain other rights because there can be a deprivation of liberty. That's true. And that's why we, in this instance, look to the criminal law. We borrow what occurs in section 1 of 3 dash 5 as well as the body of law that goes with it. So, it is clear that to determine whether there was a speedy trial, a statutory violation, we look to whether the time was told under 1 of 3 dash 5 of the criminal code. And the emergency orders are clear that they do. These times were told. If we look towards the ultimate order of the court, the Supreme Court, so that's the one that was effective on June 30th, 2021. It states that beginning October 1st, 2021, statutory time restrictions in section 1 of 3 dash 5 of the code of criminal procedure shall no longer be told. In other words, all the time before that is told. It makes clear that all days on and following October 1st shall be included in speedy trial computations as contained in section 1 of 3 dash 5 of the code of criminal procedure. And there's similar provisions with regard to when the time starts. That's March 20th. I won't quote the language. It's identical. So, it's clear that the proper analysis here is the SVP Act says we look to 1 of 3 dash 5 for the computations. And the Supreme Court order, the Supreme Court orders state that the time between March 20th, 2020 and October 1st, 2021 are told under 1 of 3 dash 5. And it's actually not even the only time that the Supreme Court, the Supreme Court clearly didn't mean to exclude SVP Act. There's no exclusion of it expressly, which it would have to be because otherwise it would override the statute. But in fact, in other orders, they dealt with SVP hearings in orders that dealt with the criminal matters. So, in their order effective February 11th, 2011, this was titled Remote Proceedings in Criminal Matters. But one of the issues they addressed there was that a hearing, and this was in 1A6, a hearing conducted under the Sexually Violent Persons Commitment Act, at which no witness testimony will be taken, could be done remotely. So, it is clear that even the Illinois Supreme Court expressly included SVP hearings when it was addressing criminal matters for the purposes of their orders that dealt with the pandemic. Let me ask you, counsel, this on this very subject. Doesn't the SVP Act itself specifically refer to the criminal speedy trial provision? Yes, that's exactly right, Your Honor. The Act is clear. It's expressed, and the statute mirrors the criminal statute. And then it says we need to look at the criminal statute to determine whether continuances toll the speedy trial time period. Do you have a handle on how many petitions or motions to continue this matter were entertained by the court over the years? There were plenty of motions. I don't know. Clearly, from the time the petition was filed to the time of trial, it was a lengthy period. So, there were many motions either to continue or that they naturally went to further dates were scheduled based on motions that were filed. And there were a couple of motions to dismiss filed in a interlocutory appeal that came to our court, right? That's exactly right. And this turns to the issue of the constitutional issue, because that's one of the factors of the Barker analysis. So, if we look at whether—so, there was no speedy trial statutory violation, and there also was no violation of its constitutional speedy trial rights. And we look to the Barker factors, and the first factor, the length of the delay, really is just relevant in terms of triggering the other three factors. And then—so, we turn to the other three factors, and we look to those, and those uniformly suggest that there was no violation of the constitutional speedy trial rights. So, first, I'll quickly address the prejudice issue, which Your Honor brought up. That's generally the fourth factor, and the issue of prejudice is whether it prejudiced respondents, in this case, ability to present a defense. In this case, it did not. There's no argument, even by a respondent, that it did. With respect to the Kansas case that a respondent brings up, the prejudice in that case was that there, the respondent was being held in prison and wasn't able to access treatment. That was the prejudice that the court found. And here, it's the exact opposite. Respondent was able to access treatment and simply did not. So, there's no prejudice. The other factor is the—I'll turn just quickly—is the respondent's assertion of his rights. In this case, respondent didn't assert his right. The speedy trial, even the request for speedy, statutory speedy trial request, wasn't filed until 2020, approximately 14 years after the petition was filed. So, that factor goes against respondent as well. So, then we turn to the reasons for the delay. And as Your Honor just brought up, the reasons for the delay also indicate that respondent wasn't denied his speedy trial rights. And the circuit court made factual findings about this that are not against the manifest weight of the evidence. Now, respondent asks this court to disregard those findings because they were concise. They were only in a paragraph. But there's no precedent suggesting that factual findings by the circuit court are to be disregarded just because they were presented in a concise manner. And so, we look to what the circuit court found. And the circuit court found that a large part of the delay is attributable to respondent because of his motions to dismiss. So, he repeatedly filed motions to dismiss on the same issue, the issue of timeliness, the interlocutory appeal. Then there was a motion for a FRI hearing. And there was other pretrial litigation generally brought about by respondent and his motions, for instance, to get a new expert because he wasn't satisfied with the expert's reports. And then to litigate the matter of whether, in fact, a DHS evaluator had retired and was no longer working as a DHS evaluator. And these were all pursued by respondent. In fact, it was the people. When respondent filed a motion for interlocutory appeal, it was the people who said to the trial judge that written discovery had been completed, depositions could be completed, the matter had been going on for years and years, and this should proceed to trial. And it was respondent who said, well, no, we don't want to go to trial. We want to have this interlocutory appeal. And indeed, even after the circuit court granted the motion for interlocutory appeal, it was the people who said, well, judge, we could continue to proceed on pretrial matters while this is on interlocutory appeal so that we could be ready to go as soon as the interlocutory appeal was over. And that was the people ready to go. And it was respondent who didn't want to pursue that. In terms of delays, though, what about the argument that the delay in part was caused by the state in 2019 on the eve of trial when the state chose to present an amended petition knowing that the respondent wasn't going to be attending, he hadn't shown up, had waived his right to appear at all times, hadn't met any hearing in years. Isn't that accurate? Well, first of all, your honor, the motion to amend the petition was unopposed. It was simply a motion to conform the contents of the petition to what would be presented at trial because as we've discussed, the matter was ongoing. And so the petition had attached the original evaluation. And the only reason why there was delay was because respondent hadn't shown up. There was the only issue was the trial court wanted to go, didn't want to continue unless the council was able to review this matter with the respondent. And respondent had decided not to show up. I don't think respondent gets to argue that this is attributable to the state when all he had to do was show up for the trial. Okay, let me ask you on the burden of proof issue for a speedy trial violation or the constitutional speedy trial violation, whose burden is it in each of those circumstances? Well, your honor, the burden is on the claimant, the respondent. He has to show that the statute is violated for the statutory violation. And the same is true for the constitutional claim as well. He has to show that his rights were violated. And we demonstrated here that they were not. For each of the factors, he has to show that the factual findings by the trial court were against the manifest weight of the evidence. He has not done so. Okay, I'll ask you to wrap your remarks, please. Okay, well, unless your honors have questions about the other issues, we would simply ask this court to find that there's been no speedy trial violation, either statutory or constitutional. And we'd ask you to affirm the judgment of the circuit court. Thank you. I'll hear a rebuttal. Thank you. I have just three points. First, the failure to assert the right under the constitutional analysis is not dispositive. That's clear in the case law. Second, the prejudice is not just about, under the constitutional analysis, is not just about the availability of a defense. It also includes the prevention of oppressive pre-trial incarceration and the minimization of anxiety and concern for the accused. But more importantly, prejudice under these circumstances is presumed. They need not show actual prejudice. And finally, my third point is, the state says the only reason that Mr. Sewell couldn't have his trial back in August of 2019 because he didn't show up, not true. The state knew that he was not going to be there. He was served with paperwork saying, you have a right to be present. If you don't take the transport, we're going to have the trial in your absence. Everyone knew he was not going to be there. Thank you both for your briefs and your arguments here today. We will take this under advisement and issue an opinion forthwith. We are adjourned. Thank you, your honors.